UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD TULLY,<br><br>    Plaintiff,<br><br>v.<br><br>RON DAVIS,<br><br>    Defendant. | Case No. 18-cv-04763-EMC<br><br>**ORDER GRANTING PETITIONER'S REQUEST FOR STAY AND ABEYANCE**<br><br>Docket No. 27 |

Petitioner Richard Tully, a condemned prisoner at California's San Quentin State Prison, has filed a federal habeas petition containing 114 claims. *See* Docket No. 26. Petitioner and Respondent agree that Claims 103, 104, 106, 109, 110, and 114 are unexhausted. *See* Docket No. 36 at 2. Petitioner has filed a state court petition for writ of habeas corpus in to order exhaust these claims. *See* Docket No. 25. In addition, pursuant to *Rhines v. Weber*, 544 U.S. 269, 278 (2005), Petitioner has filed the instant Motion to Hold Federal Habeas Proceedings in Abeyance While the State Exhaustion Petition is Pending (Docket No. 27). Respondent opposes Petitioner's request for stay and abeyance, arguing that Petitioner has not shown that his unexhausted claims are potentially meritorious.

For the following reasons, Petitioner's motion for stay and abeyance is **GRANTED**.

## I.     BACKGROUND

In 1992, a jury convicted Petitioner of first-degree murder and assault with intent to commit rape and found true the special circumstances that Petitioner committed the murder while engaged in the commission of a burglary and that he used a dangerous weapon, a knife, in the commission of both offenses. Petitioner was sentenced to death. The California Supreme Court affirmed his conviction and sentence. *People v. Tully*, 54 Cal. 4th 952 (2012). The United States

United States District Court
Northern District of California

1 Supreme Court denied certiorari review. *Tully v. California*, 568 U.S. 1175 (2013).

2 On March 16, 2011, while his direct appeal was pending in the California Supreme Court, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. The California Supreme Court denied the petition on June 20, 2018. *In re Tully*, No. S191449.

On August 7, 2018, Petitioner initiated the instant federal habeas action by asking this Court to appoint counsel and stay his execution. *See* Docket No. 1. On April 17, 2019, the Court entered an Order (Docket No. 20) granting Petitioner's request for equitable tolling of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1), thereby making Petitioner's federal habeas petition due September 13, 2019. On August 30, 2019, Petitioner filed his second petition for writ of habeas corpus in the state court, which presents the unexhausted claims alleged in Petitioner's federal petition. *See* Docket No. 25. Simultaneous with his filing of his federal petition, on September 8, 2019, Petitioner filed the instant motion for a stay of this case. Respondent filed an opposition (Docket No. 34) on September 23, 2019, and Petitioner has filed a reply (Docket No. 35).

Petitioner seeks stay and abeyance of this case so that he may exhaust the following claims in his federal petition: a) Claim 103 – Petitioner's claim that California's capital sentencing scheme unconstitutionally deprived him of a beyond a reasonable doubt jury determination of every fact necessary to sentence him to death; b) Claim 104 – Petitioner's claim that California's capital punishment system violates the Eighth Amendment due to its "variability" in selecting condemned inmates to be executed and the excess delay that attends litigation of capital sentences; c) Claim 106 – Petitioner's claim that California's capital post-conviction review process is unconstitutional; d) Claim 109 – Petitioner's claim that, as made clear by recent events, society's "evolving standards of decency" have rendered California's death penalty scheme unconstitutional; e) Claim 110 – Petitioner's claim that California's clemency procedure is unconstitutional; and f) Claim 114 – Petitioner's claim that cumulative error has resulted in a denial of his due process rights and warrants issuance of the writ of habeas corpus even if no individual error justifies relief on its own.

## II. LEGAL STANDARD

A federal court may not grant habeas relief until a petitioner has exhausted available state remedies with respect to each claim. 28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 272 (1971). A federal constitutional claim is exhausted when it has been "fairly presented" to the highest state court and that court has had a meaningful opportunity to apply controlling legal principles to the facts underlying the claim. *Picard*, 404 U.S. at 276-77.

The Supreme Court follows a rule of "total exhaustion," requiring that all claims in a habeas petition be exhausted before a federal court may grant the petition. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). A district court is permitted, however, to stay a mixed petition containing both exhausted and unexhausted claims so that the petitioner may exhaust his claims in state court without running afoul of the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Rhines*, 544 U.S. at 273-75. A district court must stay a mixed petition if: (1) the petitioner has good cause for his failure to exhaust his claims, (2) the unexhausted claims are potentially meritorious, and (3) there is no indication that the petitioner intentionally engaged in dilatory tactics. *Id.* at 278.

## III. DISCUSSION

Petitioner argues that he has demonstrated "good cause" for his failure to exhaust his claims in the state court, that his claims are potentially meritorious, and that he has not engaged in dilatory tactics. Docket No. 27 at 5-9. As discussed below, the Court agrees and therefore concludes that Petitioner meets each of the *Rhines* requirements and is entitled to a stay of this action.

A. Good Cause

The Supreme Court has not precisely defined what constitutes "good cause" for a *Rhines* stay. *See Blake v. Baker*, 745 F.3d 977, 980-81 (9th Cir. 2014). The Ninth Circuit Court of Appeals has found that good cause does not require "extraordinary circumstances." *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005). Rather, "good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify" the failure to exhaust. *Blake*, 745 F.3d at 982. In other words, "[t]he good cause element is the equitable

3

1    component of the *Rhines* test." *Id.*

2    Petitioner asserts that he has demonstrated good cause for his failure to exhaust his unexhausted claims in state court because several of his unexhausted claims are based upon "new evidence." For example, he asserts that Claim 104, his claim challenging excess "variability" and delay in California's capital punishment scheme, relies upon Governor Gavin Newsom's March 13, 2019, Executive Order placing a moratorium on executions in California and commentary on the Governor's Executive Order by a California Supreme Court Justice. *See* Docket No. 27 at 6. Likewise, he argues that Claim 110, his claim that California's clemency procedure is unconstitutional, relies upon a recent administrative order of the California Supreme Court concerning its procedures for considering executive requests for recommendations on applications for pardons and commutations and a subsequent letter from a California Supreme Court Justice to Governor Newsom highlighting numerous questions left unanswered by that administrative order. *Id.* In addition, Petitioner asserts good cause for failing to exhaust Claim 103, his claim alleging that California unconstitutionally deprived him of a beyond a reasonable doubt jury determination of every fact necessary to sentence him to death, because the claim is based upon "new law," namely, the United States Supreme Court's decision in *Hurst v. Florida*, 577 U.S. __, 136 S.Ct. 616 (2016), and subsequent state court opinions applying that decision. *Id.* 7. Finally, Petitioner asserts good cause for failing to exhaust Claim 106, his claim challenging the sufficiency of California's post-conviction review process, because he could not have fairly presented and exhausted such claim until he completed state post-conviction review. *Id.*

Respondent does not argue that Petitioner has failed to demonstrate good cause for his failure to exhaust his claims in the state court. Rather, Respondent contends only that Petitioner has not met the second *Rhines* requirement because none of his claims are potentially meritorious. *See* Docket No. 34 at 3, 4-5. Upon review of the subject claims, the Court concludes that Petitioner has in fact demonstrated good cause for his failure to exhaust his claims. Thus, Petitioner satisfies the first prong of *Rhines*.

B.   Potential Merit

Under the second prong of the *Rhines* test, it would be an abuse of discretion to stay

federal habeas corpus proceedings pending exhaustion of a "plainly meritless" claim. *Rhines*, 544 U.S. at 277. As this Court has previously observed, "[t]his rule has been interpreted to mean that a stay is appropriate as long as at least one claim is not plainly meritless." *Davis v. Davis*, Civ. No. 3:13-cv-0408-EMC, 2015 WL 4512309, at *4 (N.D. Cal. July 24, 2015) (citing *Petrosky v. Palmer*, No. 3-10-cv-0361, 2013 WL 5278736, at *5 (D. Nev. Sept. 16, 2013)). *See also Dixon v. Baker*, 847 F.3d 714, 722 (9th Cir. 2017) ("A federal habeas petitioner must establish that at least one of his unexhausted claims is not 'plainly meritless' in order to obtain a stay under *Rhines*."). The standard for judging whether a claim is "plainly meritless" for *Rhines* purposes is lenient. "In determining whether a claim is 'plainly meritless,' principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" *Dixon*, 847 F.3d at 722 (quoting *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005)). In other words, a federal court may forego a *Rhines* stay and proceed to deny an unexhausted claim on the merits "only when it is *perfectly clear* that the applicant does not raise *even a colorable* federal claim." *Cassett*, 406 F.3d at 623-24 (emphasis added). A claim is "colorable" when the petitioner has "alleged specific facts that, if true, would entitle him to relief." *Tilcock v. Budge*, 538 F.3d 1138, 1145-46 (9th Cir. 2008).

Respondent argues that each of Petitioner's unexhausted claims are without merit because they are foreclosed by existing precedent or are not cognizable in federal habeas corpus. Docket No. 34 at 5-8. As noted above, it is not necessary that all of Petitioner's claims surmount the "plainly meritless" threshold. Instead, Petitioner "must establish [only] that at least one of his unexhausted claims is not 'plainly meritless' in order to obtain a stay under *Rhines*." *Dixon*, 847 F.3d at 722. Upon close review of the relevant claims and governing case law, the Court cannot conclude that it is "perfectly clear" that Petitioner has failed to allege even one colorable claim among his unexhausted claims. *Cassett*, 406 F.3d at 623-24. By way of illustration, the Court considers Claim 103 of the federal petition.[1]

Claim 103 presents Petitioner's claim that he was unconstitutionally deprived of a beyond

---

[1] In discussing Claim 103 in greater detail, the Court signals no implicit conclusion that Petitioner's remaining unexhausted claims are "plainly meritless" for purposes of *Rhines*.

5

a reasonable doubt determination of each fact necessary to sentence him to death. Petitioner's claim is based upon the Supreme Court's *Apprendi* line of jurisprudence, culminating in the recent decision in *Hurst*. In *Hurst*, the Supreme Court first reiterated that the Sixth Amendment's jury trial guarantee, "in conjunction with the Due Process Clause, requires that each element of a crime be proved to a jury beyond a reasonable doubt." 136 S.Ct. at 621 (citing *Alleyne v. United States*, 570 U.S. 99, 104 (2013)). The Supreme Court further explained that, pursuant to *Apprendi*, "any fact that 'expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict' is an 'element' that must be submitted to a jury." *Id.* (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494 (2000)). Then, reiterating its holding in *Ring v. Arizona*, 536 U.S. 584 (2002), the Court explained that, where a jury's guilty verdict alone does not permit the imposition of a death sentence, any additional findings of fact necessary to impose such sentence—such as the finding of "aggravating circumstances"—must be found by the jury rather than a judge. *Id.* Applying these precedents, the Supreme Court in *Hurst* held that Florida's capital sentencing scheme violated Hurst's Sixth Amendment right to a jury determination of all facts necessary to sentence Hurst to death because it "required the judge alone to find the existence of an aggravating circumstance[.]" *Id.* at 624. In reaching this conclusion, the Court noted the "central and singular role the judge plays under Florida law[,]" pursuant to which the judge made the essential findings necessary to impose death, including "'the facts . . . [t]hat sufficient aggravating circumstances exist' and '[t]hat there are insufficient mitigating circumstances to outweigh the mitigating circumstances." *Id.* at 622 (quoting Fla. Stat. § 921.141(3)). Petitioner alleges that *Hurst* establishes that, "where the weighing of facts in aggravation and mitigation is a prerequisite to imposing a death sentence, the Sixth Amendment requires the state to prove to a jury, beyond a reasonable doubt, both that the aggravating circumstances exist and that they outweigh the mitigating circumstances." Docket No. 26 at 541, ¶ 9. Petitioner further alleges that "[i]n violation of *Hurst*, California permits a jury to impose a death sentence *without* finding . . . every pre-requisite to a death sentence—that aggravating factors exist; that they outweigh the mitigating factors; and that death is the appropriate punishment—beyond a reasonable doubt." Docket No. 26 at 541, ¶ 6 (emphasis in original) (citing *People v. Banks*, 59 Cal. 4th 1113, 1207 (2014)).

Respondent argues that Claim 103 is "plainly meritless" because the California Supreme Court has repeatedly upheld California's capital sentencing procedure after *Hurst* and because, he asserts, *Hurst* may not be applied retroactively to cases on collateral review. Docket No. 34 at 5-6. Although the California Supreme Court has indeed concluded that *Hurst* does not invalidate California's capital sentencing scheme, *see, e.g., People v. Rangel*, 62 Cal. 4th 1192, 1235 n.16 (2016), the mere fact that California appellate courts have so far declined to invalidate California's capital sentencing scheme after *Hurst* does not render a claim that the sentencing scheme is unconstitutional "plainly meritless." Although *Rangel* is cited in virtually every subsequent California Supreme Court decision upholding California's scheme against *Hurst* challenges,[2] the California Supreme Court's discussion of *Hurst* in *Rangel* is, in relevant part, cursory. In addressing a string of challenges to California's capital sentencing scheme, the California Supreme Court in *Rangel* held:

> The death penalty statute does not lack safeguards to avoid arbitrary and capricious sentencing, deprive defendant of the right to a jury trial, or constitute cruel and unusual punishment on the ground that it does not require either unanimity as to the truth of aggravating circumstances or findings beyond a reasonable doubt that an aggravating circumstance (other than Penal Code section 190.3, factor (b) or (c) evidence) has been proved, that the aggravating factors outweighed the mitigating factors, or that death is the appropriate sentence.

62 Cal. 4th at 1235 (citations omitted). The California Supreme Court simply remarked that "[n]othing" in *Hurst*, *Ring*, or *Apprendi* "affects our conclusions in this regard." *Id.* Inasmuch as the California Supreme Court offers any reasoning for this conclusion, it distinguishes California's sentencing scheme from Florida's due to California's requirement that a "jury weighs the aggravating and mitigating circumstances and reaches a unanimous penalty verdict that 'impose[s] a sentence of death' or life imprisonment without possibility of parole." *Id.* n.16 (quoting Cal. Pen. Code §§ 190.3, 190.4). In other words, the California Supreme Court concluded that *Hurst* does not invalidate California's capital sentencing scheme because, unlike the Florida scheme at

---

[2] *See, e.g., People v. Beck*, 8 Cal. 5th 548, -- P.3d --, 2019 WL 6461837, at *76 (Cal. Dec. 2, 2019); *People v. Johnson*, 8 Cal. 5th 475, 453 P.3d 38, 76 (Cal. 2019); *People v. Capers*, 7 Cal. 5th 989, 1014 (2019); *People v. Powell*, 6 Cal. 5th 136, 193 n.36 (2018); *People v. Jones*, 3 Cal. 5th 583, 619 (2017); and *People v. Becerrada*, 2 Cal. 5th 1009, 1038 (2017).

7

issue in *Hurst*, a California jury's sentencing verdict "is not merely 'advisory.'" *Id.* (quoting *Hurst*, 136 S.Ct. at 622). *Rangel* makes clear, however, that California's capital sentencing statute does not require proof beyond a reasonable doubt that aggravating circumstances exist or that such aggravating circumstances outweigh mitigating circumstances. 62 Cal. 4th at 1235.[3]

While the California Supreme Court is correct in its assessment that, unlike in California, the Florida scheme at issue in *Hurst* resulted in an advisory jury sentencing verdict, *Rangel* does not address the relevant arguments raised by Petitioner herein. *Rangel* does not explain its conclusion that *Hurst* does not require "findings beyond a reasonable doubt that an aggravating circumstance . . . has been proved" or "that the aggravating factors outweighed the mitigating factors[.]" 62 Cal.4th at 1235.

At least one sister state court in Delaware has concluded that *Hurst* does require that a jury's findings regarding the existence of aggravating circumstances and whether such circumstances outweigh mitigating circumstances must be based on proof *beyond a reasonable doubt*. *See Rauf v. State*, 145 A.3d 430, 434 (Del. 2016). It is thus at least debatable that *Hurst* indeed requires that such findings be made beyond a reasonable doubt. Neither the U.S. Supreme Court nor the Ninth Circuit has addressed and foreclosed a challenge to California's scheme under *Hurst*. Claim 103 is at least "colorable."

Respondent nonetheless argues that Claim 103 is also "plainly meritless" because "the Ninth Circuit has held that *Hurst* does not apply retroactively to cases, like [Petitioner's,] on collateral review." Docket No. 34 at 5 (citing *Ybarra v. Filson*, 869 F.3d 1016, 1031-33 (9th Cir. 2017)). As discussed in *Ybarra*, a "new rule of constitutional law does not usually apply retroactively" unless "it is a substantive rule which 'places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or "if it is

---

[3] The California Supreme Court has previously held that, of the statutorily enumerated aggravating and mitigating circumstances in Cal. Penal Code § 190.3, aggravating evidence may pertain to only four of the factors: 190.3(a) (the circumstances of the offense); 190.3(b) (other violent criminal conduct by the defendant); 190.3(c) (prior felony convictions); and 190.3(i) (the defendant's age). *See, e.g., People v. Coffman*, 34 Cal. 4th 1, 108-09 (2004). As recognized in *Rangel*, only factors (b) and (c) must be supported by proof beyond a reasonable doubt. 62 Cal. 4th at 1235. However, as further recognized in *Rangel*, California's capital sentencing statute does not require written findings by the jury during the penalty phase. *See id.*

8

a 'watershed rule[] of criminal procedure." 869 F.3d at 1032 (quoting *Teague v. Lane*, 489 U.S. 288, 310-311 (1989)). In *Ybarra*, the Ninth Circuit recognized that, in *Schriro v. Summerlin*, 542 U.S. 348, 355-56 (2004), the Supreme Court held that *Ring* does not apply retroactively because it does not announce a "watershed rule with regard to its holding that a jury, as opposed to a judge, must make the findings that render a defendant eligible for the death penalty." *Id.* at 1033. Reasoning that the "hypothetical rule established in *Hurst* involves only a sentencing determination," as in *Apprendi* and *Ring*, the Ninth Circuit determined that *Hurst* likewise does not apply retroactively because "neither *Ring* nor *Apprendi* apply retroactively[.]" *Id.*

Petitioner argues that *Schriro* does not bar retroactive application of *Hurst* in his case because he "is not arguing for retroactive application of the holding that the jury, as opposed to a judge, is responsible for making findings of fact. Instead, he [. . .] argu[es] that the holding of *Apprendi, Ring,* and *Hurst* [which] require[es] the jury to make the weighing determination *unanimously* and *beyond a reasonable doubt* is retroactive." Docket No. 35 at 6-7 (emphasis in original).

To be sure, the Ninth Circuit in *Ybarra* appears to have addressed this argument, noting that, "[e]ven if *Hurst* establishes that the weighing determination must be made beyond a reasonable doubt, this rule is nothing more than an extension of *Apprendi*" and that "*Apprendi* is not a watershed rule with regard to its holding that any fact . . . increase[ing] the penalty for a crime . . . must be . . . proved beyond a reasonable doubt." 869 F.3d at 1033 (citing *United States v. Sanchez-Cervantes*, 282 F.3d 664, 668 (9th Cir. 2002) (internal quotations omitted).

*Ybarra* notwithstanding, for the limited purpose of deciding whether to grant a *Rhines* stay, Petitioner's argument of retroactivity is not without support. As argued by Petitioner, the earlier Ninth Circuit precedent relied upon in *Ybarra*, *Sanchez-Cervantes*, has been called into question by at least one court in the Ninth Circuit. *See United States v. Siegelbaum*, 359 F.Supp.2d 1104, 1108 (D. Ore. 2005) (*Sanchez-Cervantes* "relied upon a narrow interpretation of *Apprendi*" that was "repudiated" by the Supreme Court in its decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005)). Moreover, in invalidating Delaware's capital sentencing statute in *Rauf*, the Delaware Supreme Court, applying state law retroactivity

1  principles modeled on *Teague*, held that the burden of proof rule espoused in *Hurst* and applied in

2  *Rauf* must be applied retroactively because it addresses a "Due Process Clause violation caused by

3  the unconstitutional use of a lower burden of proof" rather than a violation of the Sixth

4  Amendment right to a jury trial, as in *Ring* and *Schriro*. *See Powell v. Delaware*, 153 A.3d 69, 73-

5  74 (Del. 2016). Likewise, a federal district court in Florida has opined that the question whether

6  the burden of proof component of *Hurst* may be applied retroactively is sufficiently debatable that

7  a *Rhines* stay was warranted in that case. *See Guardado v. Jones*, No. 4:15-cv-256-RH, 2016 WL

8  3039840, *2 (N. D. Fla. May 27, 2016) (distinguishing *Schriro*'s *Ring* non-retroactivity holding

9  because it "did not address the requirement for proof beyond a reasonable doubt[,]" as relevant in

10 *Hurst*, and granting a stay and abeyance so that the habeas petitioner could exhaust a claim based

11 on *Hurst* in the state court). Similarly, a federal district court in Ohio granted a certificate of

12 appealability on the question of the retroactivity of the burden of proof rule of *Hurst*. *See Raglin

13 v. Mitchell*, Case No. 1:00-cv-767, 2016 WL 7029709, at *1-*2 (S.D. Ohio Dec. 2, 2016), report

14 and recommendation adopted, 2017 WL 25523.

15 Thus, Petitioner's argument about *Hurst*'s retroactivity is not frivolous. This is especially

16 so since the cited decisions rely upon a common, well-established legal foundation: prior to

17 *Teague*, the Supreme Court held that a rule establishing that the Due Process Clause requires proof

18 beyond a reasonable doubt in criminal proceedings must be applied retroactively. In *In re

19 Winship*, 397 U.S. 358, 364 (1970), the Supreme Court held that "the Due Process clause protects

20 the accused against conviction except upon proof beyond a reasonable doubt of every fact

21 necessary to constitute the crime with which he is charged." Applying this rule, the Court

22 determined that a state juvenile delinquency proceeding employing only a preponderance of the

23 evidence standard did not accord the accused minor due process. *Id.* at 365-68. Subsequently, in

24 *Ivan V. v. City of New York*, 407 U.S. 203, 204 (1972), the Supreme Court held that the rule of *In

25 re Winship* must be applied retroactively because "the major purpose" of *In re Winship*'s

26 requirement of proof beyond a reasonable doubt in criminal proceedings "was to overcome an

27 aspect of a criminal trial that substantially impairs the truth-finding function[.]" The Supreme

28 Court reaffirmed this principle in *Hankerson v. North Carolina*, 432 U.S. 233, 243-44 (1977),

another pre-*Teague* case. In *Hankerson*, the Court held that the North Carolina Supreme Court erred in failing to retroactively apply *Mullaney v. Wilbur*, 421 U.S. 684 (1975). In *Mullaney*, the Supreme Court applied *In re Winship* to invalidate a state law that required "a defendant to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter." 421 U.S. at 703-04. Apart from the state law's effective shifting of the burden of proof from the State to the defendant, the Court found that utilizing this lower burden of proof permitted the "intolerable result" of a defendant receiving "a life sentence when the evidence indicates that it is as likely as not that he deserves a significantly lesser sentence." *Id.* Although the defendant in *Hankerson* was convicted prior to the decision in *Mullaney*, the Supreme Court ruled that the state appellate court erred in failing give *Mullaney* retroactive effect because the rule in *Mullaney* "was designed to diminish the probability that an innocent person would be convicted and thus to overcome an aspect of a criminal trial that 'substantially impairs the truth-finding function.'" 432 U.S. at 242 (quoting *Ivan V.*, 407 U.S. at 204-05). *Ivan V.* and *Hankerson* thus demonstrate the potential viability of the premise that, to the extent *Hurst* announced a new due process rule requiring that the existence of aggravating circumstances and the weighing determination be proved beyond a reasonable doubt, that rule affects the reliability of "truth-finding" at trial must be applied retroactively.

Accordingly, Claim 103 is not "plainly meritless," and Petitioner has therefore satisfied the second prong of *Rhines*.

C.      Dilatory Litigation Tactics

Under the third prong of the *Rhines* test, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if . . . there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. Respondent does not argue that Petitioner has engaged in dilatory litigation tactics that preclude a grant of a stay under *Rhines*. In the absence of any concerted argument by Respondent, the Court discerns no basis to conclude that Petitioner has engaged in "dilatory litigation tactics." Indeed, until he filed his state exhaustion petition prior to filing his federal petition, Petitioner had been following this Court's orders and the District's Capital Habeas Local Rules in litigating his

petition. That Petitioner filed his state exhaustion petition prior to when the Court's Local Rules required him to do so, and that he did so out of an abundance of caution considering California's timeliness rules (*see* Docket No. 28 at 2-3), only buttresses the Court's conclusion that Petitioner has not engaged in "dilatory litigation tactics." Accordingly, Petitioner has satisfied the third prong of the *Rhines* test.

Petitioner thus satisfies all three prongs of *Rhines*.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's motion for stay and abeyance (Docket No. 27) is **GRANTED** and this matter is **STAYED**. Thirty days after the entry of this order, and every 90 days thereafter until proceedings in his state exhaustion case are completed, Petitioner shall serve and file in this Court a brief report updating the Court and the parties on the status of his pending state habeas action. No later than 30 days after proceedings in his state case are completed, Petitioner shall serve and file notice that proceedings are completed.

This order disposes of Docket No. 27.

**IT IS SO ORDERED**.

Dated: January 16, 2020

_____
EDWARD M. CHEN
United States District Judge